1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

DOMAINMARKET, LLC,

No.   2:22-cv-871

10

Plaintiff,

11

v.

12

COMPAÑIA MUNDIAL DE
SEGUROS S.A.,

13

14

Defendant.

15
16

**COMPLAINT**

17

Plaintiff, DomainMarket, LLC ("Plaintiff" or "DomainMarket"), by and through its

18

undersigned attorneys, sue Compañia Mundial de Seguros S.A. ("Defendant" or "Seguros"), and

19

allege as follows:

20

**NATURE OF THE ACTION**

21

1.      This is an action for declaratory relief to establish that Plaintiff's registration of the

22

domain name <segurosmundial.com> (the "Domain Name") is lawful under the Anti-

23

Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), and to prevent the

24

25

transfer of the Domain Name to Seguros, which was ordered in an administrative panel decision

26

COMPLAINT – 1

1   under the Uniform Domain Name Dispute Resolution Policy ("UDRP") in a proceeding captioned

2   *Compañia Mundial de Seguros S.A. v. DomainMarket.com*, Can No. D2022-1003.

### THE PARTIES

2.      Plaintiff DomainMarket, LLC is a limited liability company organized and existing under the laws of the state of Florida.

3.      Upon information and belief, Defendant, Compañia Mundial de Seguros S.A., is a limited company organized in the country of Colombia.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff seeks a declaration, pursuant to 28 U.S.C. §§ 2201, that its registration and use of the Domain Name does not violate Defendant's rights under the ACPA, and other provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant submitted itself to the jurisdiction of this Court when it filed its complaint pursuant to the UDRP. Specifically, Seguros agreed to jurisdiction "for the courts at the location of the principal office of the concerned registrar." Am. UDRP Complaint at ¶ 15. A duplicate of the Amended UDRP Complaint (without exhibits) is attached hereto as Exhibit 1.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the domain name registrar, Enom, LLC, is located at 5808 Lake Washington Blvd. NE, Suite 300, Kirkland, Washington 98033, which is in this judicial District.

### ALLEGATIONS OF FACT

7.      Plaintiff operates a secondary marketplace for premium domain names, which it established in 2008. It currently maintains a portfolio of approximately 350,000 domain names,

COMPLAINT – 2

which are offered for sale through a website located at *<domainmarket.com>*. Plaintiff sells over 1,000 domain names annually.

8.     In view of the proliferation of use of the Internet in the last decade, with approximately 350 million registered domain names worldwide, the secondary market for domain names plays an important role in the digital economy by affording business owners the opportunity to acquire valuable brand assets, namely domain names, that otherwise may not be available. Many of these businesses, including Plaintiff, create and/or acquire their own inventory in order to offer prospective business owners an opportunity to search or browse through existing brand ideas rather than have to generate them on their own.

9.     On December 12, 2011, DomainMarket registered the Domain Name.

10.    At that time, Plaintiff was registering or purchasing upwards of 500 domain names per day.

11.    To select domain names to register or purchase, Plaintiff uses proprietary software and algorithms that analyze available or soon to be available domain names, including expiring domain names being sold at auction. Factors the algorithms consider to determine whether a domain name would be of value to Plaintiff's customers include the number of characters in each domain name, whether the domain name includes common terms, and whether each domain name has features that would make it marketable and easy to remember, such as the use of alliteration.

12.    Plaintiff (which is based in Florida, in the United States) registered the Domain Name in good faith in the ordinary course of its business, because the Domain Name is comprised of generic words that combine to form a short memorable domain name well suited for many possible uses, which gives it significant potential resale value. The term "seguros" in particular is perceived to have a high value because it is a common generic Spanish word that has numerous

COMPLAINT − 3

meanings, including insurance, safety devices, locks, and safe places and thus can be used by a variety of participants in a variety of industries. In addition, the Domain Name was perceived to be a good acquisition because of the combination of the descriptive word "seguros" with the geographically descriptive term "mundial," which is the Spanish word for world, worldwide, or global.

13.     When used together, the terms SEGUROS and MUNDIAL form a generic phrase that is easily adaptable for many concepts, products, and services and would be intuitively understood by Spanish speaking consumers when used to refer to insurance, safety, or security related products available worldwide.

14.     Plaintiff had no knowledge of Defendant or any claimed, exclusive rights in the combination of the terms "seguros" and "mundial" at the time the Domain Name was acquired.

15.     In the over 10 years that Plaintiff has owned the Domain Name, the Domain Name has never been used to sell third-party goods or services competitive with Defendant or displayed pay-per-click advertising that directs consumers to third party goods for services competitive with Defendant.

16.     Rather, consumers who visit the Domain Name are currently redirected to a landing page, located at *<https://dan.com/buy-domain/segurosmundial.com>*. The landing page includes a link to purchase the Domain Name or other popular domain names being offered through the same broker.

17.     At the time that the UDRP Complaint was filed, the Domain Name redirected to a landing page on DomainMarket's own domain at: *<https://www.domainmarket.com/buynow/segurosmundial.com.>* This landing page displayed the sale price of the Domain Name, a means to purchase it, a phone number for DomainMarket, a

COMPLAINT — 4

search engine for browsing the premium domain names available for purchase on DomainMarket.com, links to information about DomainMarket, some of its affiliates, and DomainMarket.com, and other marketing material about domain names. This landing page did not include any pay-per-click or other advertising.

18.     Plaintiff's use of the Domain Name to merely offer that domain for sale constitutes a bona fide offering of goods and services.

19.     Plaintiff has never intended to divert customers from a website owned by Defendant, and Plaintiff's use of the Domain Name has not caused, nor is it likely to cause, confusion as to the source, sponsorship, affiliation, or endorsement of the site.

20.     Plaintiff has never approached Defendant or any of its competitors regarding a potential sale of the Domain Name.

21.     Plaintiff provided accurate contact information when applying for registration of the Domain Name, and has maintained accurate contact information.

22.     DomainMarket's registration and offering to sell the Domain Name does not violate the ACPA, as DomainMarket merely registered the generic name as part of its ordinary business practice of registering generic domain names.

23.     As part of Plaintiff's registration agreements with domain name registrar eNom, Inc., Plaintiff agreed to be found by the UDRP, which requires Plaintiff to submit to and participate in a mandatory administrative arbitration proceeding in the event that a third party, such as Defendant, submits a complaint to a dispute resolution service provider, such as the World Intellectual Property Organization ("WIPO") concerning a domain name that Plaintiff has registered.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

24.     On or about March 29, 2022, Seguros filed a complaint with WIPO under the UDRP, seeking transfer of the Domain Name to Defendant.

3

4

5

6

25.     In its complaint, Defendant alleged that it owns enforceable rights and trademark SEGUROS MUNDIAL, that Plaintiff has no rights or legitimate interests in the Domain Name, and that Plaintiff registered and is using the Domain Name in bad faith.

7

26.     On May 1, 2022, DomainMarket timely responded to the UDRP complaint.

8

9

10

27.     On June 7, 2022, WIPO notified the parties of the decision in the UDRP proceeding, which was dated May 23, 2022. A duplicate of the notification email and UDRP decision is attached hereto as Exhibit 2.

11

12

13

14

28.     Rule 4(k) of the UDRP provides Plaintiff an opportunity to stay the transfer of the Domain Name by commencing a lawsuit within 10 business days of notification of a WIPO decision.

15

**FIRST CAUSE OF ACTION**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**

16

17

29.     DomainMarket repeats and realleges each and every allegation set forth above.

18

19

30.     An actual controversy exists with respect to whether Seguros is entitled to transfer of the Domain name, based on Seguros' alleged rights under the ACPA.

20

21

31.     In the absence of a declaration from this Court, Enom LLC will transfer the Domain Name to the control of Seguros and DomainMarket will suffer immediate and irreparable harm.

22

23

24

25

32.     At the time that DomainMarket registered the Domain Name, Defendant's alleged marks, SEGUROS MUNDIAL and MUNDIAL SEGUROS, were neither "distinctive" nor "famous" as provided for under 15 U.S.C. § 1125(d)(1)(A)(ii).

26

COMPLAINT  – 6

33.     At the time of registration of the Domain Name, Defendant's rights in the alleged marks were limited to the geographical areas where Defendant was offering services, namely, Colombia. Plaintiff was and has always been located in Maryland and Florida, and had no reason to be aware of Defendant's geographically limited use of alleged marks.

34.     Defendant does not have any registered federal trademarks in the United States comprising or incorporating the alleged marks.

35.     Further, in registering the Domain Name, Plaintiff lacked any "bad faith intent," as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from Defendant's alleged marks.

36.     Plaintiff has not and is not using the Domain Name to advertise, promote, or sell competing goods or services to those covered by the alleged marks.

37.     Plaintiff had reasonable grounds to believe that it's registration and use of the Domain Name was a fair use or otherwise lawful, as provided in 15 U.S.C. § 1125(d)(1)(B)(ii).

38.     Plaintiff's registration and use of the Domain Name does not violate Defendant's rights under the ACPA.

39.     DomainMarket's registration and offering to sell the Domain Name does not violate Seguros' rights in the alleged trademarks under the ACPA. In registering the Domain Name, DomainMarket did not have "bad faith intent" to profit from Defendant's alleged trademarks, as provided in 15 U.S.C. § 1125(d)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enters a judgment:

A.     Declaring that Plaintiff has the right to register and use the Domain Name;

B.     Declaring that Plaintiff did not register the Domain Name in bad faith;

COMPLAINT – 7

1    C.      Declaring that Plaintiff is not cyber-squatting within the meaning of 15 U.S.C. §

2   1125(d);

3    D.      Prohibiting Defendant and the registrar, Enom, LLC, from taking any further action

4   with respect to the transfer of the Domain Name;

5    E.      Awarding Plaintiff the costs of this suit, including reasonable attorneys' fees; and

6

7    F.      Awarding such other and further relief as the Court deems just and proper.

8

9   DATED:  June 21, 2022                    By:  s/ William C. Rava
                                                  William C. Rava, Bar No. 29948
10

11                                          By:  s/ Caleb Bacos
                                                 Caleb Bacos, Bar No. 58407
12
                                            **Perkins Coie LLP**
13                                          1201 Third Avenue, Suite 4900
                                            Seattle, Washington 98101-3099
14                                          Telephone: +1.206.359.8000
                                            Facsimile: +1.206.359.9000
15                                          WRava@perkinscoie.com
                                            CBacos@perkinscoie.com
16
                                            James L. Bikoff (*pro hac vice* forthcoming)
17                                          jbikoff@sgrlaw.com
                                            Richard D. Rivera (*pro hac vice*
18                                          forthcoming)
                                            rrivera@sgrlaw.com
19                                          **SMITH, GAMBRELL & RUSSELL LLP**
                                            1055 Thomas Jefferson St., N.W., Suite 400
20                                          Washington, D.C. 20007
                                            Telephone: 202.263.4300
21                                          Facsimile: 202.263.4329
22
                                            *Attorneys for Plaintiff*
23                                          *DomainMarket, LLC*

24

25

26

COMPLAINT  – 8

# Exhibit 1

**Gómez-Pinzón**

SINCE 1992

## COMPLAINT TRANSMITTAL COVERSHEET

Attached is a Complaint that has been filed against you with the World Intellectual Property Organization (**WIPO**) Arbitration and Mediation Center (the **Center**) pursuant to the Uniform Domain Name Dispute Resolution Policy (the **Policy**) approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**) approved by ICANN on September 28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**) in effect as of July 31, 2015.

The Policy is incorporated by reference into your Registration Agreement with the Registrar(s) of your domain name(s), in accordance with which you are required to submit to a mandatory administrative proceeding in the event that a third party (a **Complainant**) submits a complaint to a dispute resolution service provider, such as the Center, concerning a domain name that you have registered.  You will find the name and contact details of the Complainant, as well as the domain name(s) that is/are the subject of the Complaint in the document that accompanies this Coversheet.

Once the Center has checked the Complaint to determine that it satisfies the formal requirements of the Policy, the Rules and the Supplemental Rules, it will forward an official copy of the Complaint, including annexes, to you by email as well as sending you hardcopy Written Notice by post and/or facsimile, as the case may be.  You will then have 20 calendar days from the date of Commencement within which to submit a Response to the Complaint in accordance with the Rules and Supplemental Rules to the Center and the Complainant.  You may represent yourself or seek the assistance of legal counsel to represent you in the administrative proceeding.

- The **Policy** can be found at https://www.icann.org/resources/pages/policy-2012-02-25-en

- The **Rules** can be found at  https://www.icann.org/resources/pages/udrp-rules-2015-03-11-en

- The **Supplemental Rules**, as well as other information concerning the resolution of domain name disputes can be found at http://www.wipo.int/amc/en/domains/supplemental/eudrp/newrules.html

**Gómez-Pinzón**
SINCE 1992

- A **model** **Response** can be found at http://www.wipo.int/amc/en/domains/respondent/index.html

Alternatively, you may contact the Center to obtain any of the above documents. The Center can be contacted in Geneva, Switzerland by telephone at +41 22 338 8247, by fax at +41 22 740 3700 or by email at domain.disputes@wipo.int.

You are kindly requested to contact the Center to provide an alternate email address to which you would like (a) the Complaint, including Annexes and (b) other communications in the administrative proceeding to be sent.

A copy of this Complaint has also been sent to the Registrar(s) with which the domain name(s) that is/are the subject of the Complaint is/are registered.

By submitting this Complaint to the Center the Complainant hereby agrees to abide and be bound by the provisions of the Policy, Rules and Supplemental Rules.

**Gómez-Pinzón**
SINCE 1992

Before the:

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

| | |
|---|---|
| ***COMPAÑÍA MUNDIAL DE SEGUROS S.A.*** <br> **Calle 33 #6B - 24, Bogotá, Colombia** <br> *(Complainant)* | |
| -v- | **Disputed Domain Name(s):** |
| ***Domain      Administrator, DomainMarket.com*** <br> ***9812 Falls Road, Suite 114-331*** <br> ***Potomac, MD 20854*** <br> ***United States of America*** <br><br> *(Respondent)* | *SEGUROSMUNDIAL.COM* |

_____

## COMPLAINT

(Rules, Paragraph 3(b); Supplemental Rules, Paragraphs 4(a), 12(a), Annex E)

### I. Introduction

[1.]     This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), approved by ICANN on September

**Gómez - Pinzón**

SINCE 1992

28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**) in effect as of July 31, 2015.

**Gómez-Pinzón**
SINCE 1992

## II. The Parties

### A. The Complainant
(Rules, Paragraphs 3(b)(ii) and (iii))

[2.]   The Complainant in this administrative proceeding is **COMPAÑIA MUNDIAL DE SEGUROS S.A.** (hereinafter "**SEGUROS MUNDIAL**").

[3.]   The Complainant's contact details are:

|        |        |
|--------|--------|
| Address: | *Calle 33 #6B - 24, Bogotá, Colombia* |
| Telephone: | *+57 601 2855600* |
| Email: | *mjaramillo@gomezpinzon.com* *notificacionespi@gomezpinzon.com* |

[4.]   The Complainant's authorized representative in this administrative proceeding is:

- **MAURICIO JARAMILLO CAMPUZANO**

|        |        |
|--------|--------|
| Address: | *Calle 67 n. ° 7 – 35. Oficina 1204. Bogotá, Colombia* |
| Telephone: | *+57 601 319 2900* |
| Email: | *mjaramillo@gomezpinzon.com* *notificacionespi@gomezpinzon.com* |

[5.]   The Complainant's preferred method of communications directed to the Complainant in this administrative proceeding is:

Material including hardcopy (where applicable)

|        |        |
|--------|--------|
| Method: | Currier |
| Address: | *Calle 67 n. ° 7 – 35. Oficina 1204. Bogotá, Colombia* |
| Contact: | *MAURICIO JARAMILLO CAMPUZANO* |

**Gómez-Pinzón**
SINCE 1992

### B. The Respondent
(Rules, Paragraph 3(b)(v))

[6.]    According to the information provided by the Center on March 25, 2022, the Respondent in this administrative proceeding is:

>    Domain Administrator, DomainMarket.com

>    A copy of the communication submitted by the Center on March 25, 2022, informing the registrant's identity is provided as Annex 1.  Annex 1 also contains a printout of the database search conducted on Mach 5, 2022.

[7.]    All information known to the Complainant regarding how to contact the Respondent is as follows:

- **DOMAIN ADMINISTRATOR, DOMAINMARKET.COM.**

| | |
|---|---|
| Address: | *9812 Falls Road, Suite 114-331, Potomac, MD 20854, United States of America* |
| Telephone: | *+1 2404828701* |
| | *+1 2402920663* |
| Email: | BuyNow@DomainMarket.com |

### III. The Domain Name(s) and Registrar(s)
(Rules, Paragraphs 3(b)(vi), (vii))

[8.]    This dispute concerns the domain name(s) identified below:

**Domain name:** segurosmundial.com

**Registration date:** December 12, 2011

[9.]    The registrar(s) with which the domain name(s) is/are registered is/are:

**Name:** ENOM, INC

**Gómez-Pinzón**
SINCE 1992

**Registrar WHOIS server:** whois.enom.com

**Registrar URL:** http://www.enomdomains.com

**Registrar:** www.enom.com

**IANA ID:** 48

**Abuse contact email**: abuse@enom.com

**Abuse contact phone:** +1 4259744689

## IV. Language of Proceedings

(Rules, Paragraph 11)

[10.]  As per the language of the Registration Agreement employed by ENOM, INC. the proceeding must be conducted in English.  A copy of the Registration Agreement is provided as Annex 2.

## V. Jurisdictional Basis for the Administrative Proceeding

(Rules, Paragraphs 3(a), 3(b)(xiv))

[11.]  This dispute is properly within the scope of the Policy and the Administrative Panel has jurisdiction to decide the dispute. The Registration Agreement provided as Annex 2, pursuant to which the domain name that is the subject of this Complaint has been registered, incorporates the Policy.

Specifically, Section 17 of Registration Agreement provided as Annex 2 contains a dispute resolution clause which reads as follows: "***Dispute Resolution Policy****: You are bound by all ICANN consensus policies and all policies of any relevant registry, including but not limited to: (i) the Uniform Domain Name Dispute Resolution Policy ("UDRP"), along with the UDRP Rules and all Supplemental Rules of any UDRP provider; and (ii) the Uniform Rapid Suspension System ("URS"), along with the URS Rules and all Supplemental Rules of any URS provider.*"

Therefore, pursuant to sections 1 and 4.a) of the Policy, the Panel has jurisdiction to resolve this matter.



### VI. Factual and Legal Grounds

(Policy, Paragraphs 4(a), (b), (c); Rules, Paragraph 3)

[12.]   This Complaint is based on the following grounds:

**A.   The domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;**

(Policy, Paragraph 4(a)(i); Rules, Paragraphs 3(b)(viii), (b)(ix)(1))

**1.**   The Complainant actively participates in the insurance market, providing contractual performance insurances, litigation bonds, aviation insurances, car insurances, life insurances, personal injury insurances and credit insurance, among many others.

**2.**   As a result of its uniform and continuous efforts, the Complainant enjoys wide recognition in the Colombian insurance market, as evidenced in Annex 3.

**3.**   The complainant identifies its services in the Colombian market by means of the registered trademarks «SEGUROS MUNDIAL» and «MUNDIAL SEGUROS.»

**4.**   The combined use of the expressions «SEGUROS» and «MUNDIAL» to identify insurance services in the Colombian market is truly distinctive and exceptional, as the Complainant is the only company that currently holds registered trademarks to protect the combined use of the said expressions under class 36 of the Nice Classification, as evidenced in Annex 4.

**5.**   The Complainant is the exclusive holder of the following registered trademarks in Colombia:



**Chart n.° 1**

| SIGN | CLASS | CERTIFICATE | REGISTRATION DATE | EXPIRING DATE |
|---|---|---|---|---|
| | 36 | 407422 | August 31, 2010 | August 31, 2030 |
| | 36 | 398116 | March 4, 2010 | March 4, 2030 |
| | 36 | 503808 | July 23, 2014 | July 23, 2024 |
| | 36 | 503809 | July 23, 2014 | July 23, 2024 |
| | 36 | 503810 | July 23, 2014 | July 23, 2024 |
| | 36 | 503811 | July 23, 2014 | July 23, 2024 |

**Source: Public database from the Colombian Trademark Office (Superintendence of Industry and Commerce -SIC)**

**Gómez-Pinzón**
SINCE 1992

Trademark certificates and certificates related to other distinctive signs are provided on Annex 5 and sub-annexes, showing that these rights are valid, enforceable, and are exclusively held by the Claimant.

**6.** Likewise, the Complainant is the exclusive holder of the following distinctive signs registered before the Colombian Trademark Office:

**Chart n.° 2**

| SIGN | SCOPE | CERTIFICATE | PROTECTION DATE | STATUS |
|---|---|---|---|---|
| Trade Name ("*nombre comercial*"):<br><br>"**Mundial Seguros**" | Products and services related to class 36 of the Nice Classification. | 9727 | July 28, 1992 | Valid and enforceable |
| Business name ("*enseña comercial*"):<br><br>"**Mundial Seguros**" | Products and services related to class 36 of the Nice Classification. | 9758 | July 28, 1992 | Valid and enforceable |

**Source: Public database from the Colombian Trademark Office (Superintendence of Industry and Commerce -SIC)**

Trademark certificates and certificates related to other distinctive signs are provided on Annex 5 and sub-annexes, showing that these rights are valid, enforceable, and are exclusively held by the Complainant.

**7.** Besides, the Complainant also identifies several of its commercial establishments in Colombia using the expressions «SEGUROS MUNDIAL» and «MUNDIAL SEGUROS,» as evidenced in Annex 7.

**8.** Over the years, the Complainant's trademarks have enjoyed widespread recognition and reputation in the Colombian market. The brand «MUNDIAL SEGUROS,»

**Gómez-Pinzón**
SINCE 1992

for example, was declared as a well-known trademark by the Colombian Trademark Office by means of Resolution n.° 024434 dated April 29, 2011, as evidenced in Annex 6.

**9.**     As the Administrative Panels have stated in similar cases, the incorporation of a well-known trademark in a domain name (as it happens on the case at issue) is sufficient to establish confusing similarity regardless of the way that the trademark is being used (*Skyscanner Limited v. Super Privacy Service LTD c/o Dynadot / Werner Mann Case No. D2021-3447*).

**10.**     The expression «SEGUROS MUNDIAL» is also used by the Claimant on its registered domain name, as the exclusive holders of trademark rights related to the terms «SEGUROS MUNDIAL» and «MUNDIAL SEGUROS.»  For the reference of the Panel, the domain name registered by the Claimant is:

**Chart n.° 2**

| DOMAIN NAME | Registration date | Renewal date | Registrar |
|---|---|---|---|
| segurosmundial.com.co | 2013-08-29 | 2021-08-17 | Mi.com.co |

**Source: Own elaboration**

Ownership evidence in connection with this domain is provided as Annex 8.

**11.**     The disputed domain name «**SEGUROSMUNDIAL.COM**» is identical to the trademarks «SEGUROS MUNDIAL» and confusingly similar to the trademarks «MUNDIAL SEGUROS,» which are both exclusively held by the Complainant.

**12.**     Consumers in the market could understand that the domain at dispute, «**SEGUROSMUNDIAL.COM,**» may give them access to the Claimant's online sales channel.  They could also wrongly conclude there is a sort of license between the Claimant and the domain registrant/holder to reproduce and use the expressions «SEGUROS MUNDIAL» and «MUNDIAL SEGUROS.»

**Gómez-Pinzón**
SINCE 1992

13.     The expressions «SEGUROS MUNDIAL» and «MUNDIAL SEGUROS» are the prevailing nominative element of the trademark family held by the Complainant.   The registration and use of a domain name containing the expression «SEGUROS MUNDIAL» without the prior consent of the trademark owner constitute an infringement of the owners' exclusive rights.

B.  **The Respondent has no rights or legitimate interests in respect of the domain name(s);**
(Policy, Paragraph 4(a)(ii); Rules, Paragraph 3(b)(ix)(2))

14.     The Respondent has no legitimate interests regarding the domain name «**SEGUROSMUNDIAL.COM**,**»** as this website is not offering real content. In fact, it is merely used to announce the holder's intention in selling the domain, as evidenced in Annexes 9 and 13.

15.     As the Administrative Panels have stated in similar cases, absence of legitimate interests is given *prima facie* when the disputed name is being used for hosting a website that "*contained no content but merely offered the domain name for sale,*" as it happens at this instant case (*Intesa Sanpaolo S.p.A. v. Domain Administrator, See PrivacyGuardian.org / Mesut Erdogan Case No. D2018-0570*).

16.     The Claimant has never licensed or otherwise permitted the Respondent to use the expressions «SEGUROS MUNDIAL» or «MUNDIAL SEGUROS» on the disputed domain name, as there is no license agreement in this regard.

17.     The Respondent has not used or performed demonstrable preparations to use the domain at dispute with a *bona fide* offering of goods or services.

18.     The Respondent has not been commonly known by the disputed domain name and has no trademark rights that correspond to the domain name.

**Gómez-Pinzón**
SINCE 1992

**19.**    Likewise, the Respondent is not making a "legitimate noncommercial or fair use of the domain name" and has no legitimate interests at all regarding the domain name at dispute.

**20.**    The Respondent cannot allege a legitimate interest on a "*first-to-file*" or "*first-to-register*" basis in connection with the trademarks «SEGUROS MUNDIAL» because:

- Administrative Panels have stated that the Policy does not grant automatic rights on a "*first-to-file*" or "*first-to-register*" basis, thereby rejecting the application of these defenses when the respondent does not make genuine or legitimate use of the domain name at dispute, as it happens at this instant case (*Solvay SA v. Domain Administrator Case No. D2015-1867*).

- Administrative Panels have stated that the "*first-to-register*" defense is inapplicable in cases where the respondent is merely using the domain name to offer it for sale, as such passive holding contributes no value-added to the internet community and it does not provide a legitimate interest protected by the Policy, as it happens at this instant case (*General Electric Company v. John Bakhit Case No. D2000-0386*).

- In any case, the trademarks «MUNDIAL SEGUROS» held by the Complainant, reproduced on the disputed domain name and declared a well-known trademark by the Colombian authority, were registered a long time before the registration of the domain name. Therefore any "first-to-register" consideration becomes nothing but inapplicable at this instant case.

**21.**    In light of the foregoing, the Respondent has no legitimate interest in the disputed domain name and is merely performing a passive holding not protected by the Policy.

**Gómez-Pinzón**
SINCE 1992

**C.   The domain name was registered and is being used in bad faith.**

(Policy, paragraphs 4(a)(iii); Rules, paragraph 3(b)(ix)(3))

**22.**     The domain name «**SEGUROSMUNDIAL.COM**» has been registered and is being used in bad faith since the Respondent's primary purpose in registering or acquiring this domain was no other than to offer it for sale for a highly exaggerated price that exceeds the out-of-pocket costs directly related to the domain name.

**23.**     The domain name «**SEGUROSMUNDIAL.COM**» is currently offered for sale for a price of USD$2,000,000 (two million dollars), as evidenced in Annexes 9 and 13.

**24.**     The price of the domain name «**SEGUROSMUNDIAL.COM**» has been increasing dramatically over the last months until reaching its current value due to the indirect inquiries presented by the Complainant to acquire a domain.

**25.**     On September 6, 2021, one of the Associates of the firm Gómez-Pinzón, who represents the interests of the Complainant in this and other trademark dispute matters, sent an email to the Marketplace "*Afternic*" expressing his interest in acquiring the domain name «**SEGUROSMUNDIAL.COM**,» as evidenced in Annex 10.

**26.**     This email was sent by the Associate on his behalf without disclosing the Complainant's name (his client), aiming to get information about the identity of the domain name's holder and enter a possible negotiation for acquiring the domain under fair, reasonable terms. The email in question was never replied to, despite a follow-up communication sent on September 7, 2021.

**27.**     For that time, and at least until October 1, 2021, the sale price of the domain name «**SEGUROSMUNDIAL.COM**» was the approximate equivalent to USD 942,140 (nine hundred and forty-two thousand one hundred and forty dollars), as evidenced in Annex 11.

**28.**     Surprisingly, the price of the domain name increased substantially after this expression of interest. For October 21, 2021, the sale price of the domain name

14

**Gómez-Pinzón**
SINCE 1992

«SEGUROSMUNDIAL.COM» was higher than the equivalent to USD$1,800,000 (one million eight hundred thousand dollars), as evidenced in Annex 12.

29.     Nowadays, there is a running auction on "GoDaddy Colombia" for the acquisition of the domain name «**SEGUROSMUNDIAL.COM**,» for a direct sale price of USD 2,000,000 (two million dollars) and a minimum bid of USD 1,300,000 (one million three hundred thousand dollars).  Yet, to date, the auction had only 17 views as of January 14, 2022, and no offers have been made, thereby shoring the artificial price for acquiring the domain name at dispute, as evidenced in Annex 13.

30.     The abrupt and rapid increase of the price of the domain name in response to a manifestation of interest, and the existence of a running auction for exorbitant prices and bids, shows that the domain name «**SEGUROSMUNDIAL.COM**» has been registered with the sole purpose of selling it for an artificial price that exceeds the out-of-pocket costs related to this domain, thereby showing the bad faith of the Respondent.

31.     As the Administrative Panels have stated in similar cases, a public offer for sale in connection with a domain constitutes a bad faith sign by itself, even if such an offer is not directly addressed to the complainant, as it happens at this instant case (*Intesa Sanpaolo S.p.A. v. Domain Administrator, See PrivacyGuardian.org / Mesut Erdogan Case No. D2018-0570*).

32.     As the Administrative Panels have stated in similar cases, the offer to sell a domain name for exaggerated or excessive prices is a bad faith sign.  In *Sennheiser electronic GmbH & Co. KG v. Jeff Holden, Holdenz Case No. D2019-0796,* for example, the Administrative Panel found that minimum selling price of EUR 44,507.74 constitutes an exorbitant price expressing the defendant's bad faith.  Likewise, in *The Nasdaq Stock Market, Inc. v. Donal Bergin Case No. DTV2002-0003*, the Administrative Panel arrived at the same conclusion for a selling price of USD 1,500,000.  In line with such precedents, the bad faith, in this case, is nothing but evident as the domain name at dispute is offered for USD$2,000,000.

**Gómez-Pinzón**
SINCE 1992

33.     As the Administrative Panels have stated in similar cases, offering a domain name using auctions constitutes a bad faith sign itself.  In *Wrenchead.com, Inc. v. Alison Hammersla Case No. D2000-1222*, for example, the Administrative Panel found that the auction of the domain name conducted through a third party's website under a minimum bid of USD$250 constituted a clear sign of the respondent's bad faith. In line with such precedents, the bad faith, in this case, is evident to the extent that the domain is offered for auction under a third-party website, with a minimum bid of USD$1,300,000.

34.     Finally, it is worth noticing that the Respondent has been sued in several UDRP proceedings conducted before the Center.  The appointed Administrative Panels have frequently found that this company has registered domain names in bad faith and without legitimate interests.  The following chart provides a list of 5 cases where the Respondent has lost domain names for factual circumstances which are nothing but similar to this instant case:

**Chart n.° 3**

| CASE NUMBER | COMPLAINANT | RESPONDENT | Result |
|---|---|---|---|
| D2022-0016 | Société Librairie Fernand Nathan-Fernand Nathan & Cie, France | Domain Administrator, DomainMarket.com | Transfer |
| D2020-1199 | Facebook Inc., United States of America | Domain Administrator, DomainMarket.com | Transfer |
| D2019-0830 | Lakes Gas Co., United States of America | Domain Administrator, DomainMarket.com | Transfer |
| D2018-0540 | Supermac's (Holdings) Limited of Galway, Ireland | Domain Administrator, DomainMarket.com | Transfer |
| D2017-0552 | Arne Jacobsen Design I/S of Virum, Denmark | Domain Administrator, DomainMarket.com | Transfer |

**Source: Own elaboration**

35.     In light of the preceding, it is nothing but crystal clear that the disputed domain name has been registered and is being used in bad faith, and the Policy does not protect such use.

**Gómez-Pinzón**

SINCE 1992

### VII. Remedies Requested

(Rules, Paragraph 3(b)(x))

[13.]   In accordance with Paragraph 4(i) of the Policy, for the reasons described in Section VI above, the Complainant requests the Administrative Panel appointed in this administrative proceeding the disputed domain name «**SEGUROSMUNDIAL.COM**» be transferred to the Complainant.

### VIII. Administrative Panel

(Rules, Paragraph 3(b)(iv); Supplemental Rules, Paragraph 8(a))

[14.]   The Complainant elects to have the dispute decided by a **single member** Administrative Panel.

### IX. Mutual Jurisdiction

(Rules, Paragraph 3(b)(xii))

[15.]   In accordance with Paragraph 3(b)(xii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

### X. Other Legal Proceedings

(Rules, Paragraph 3(b)(xi))

[16.]   None.

### XI. Communications

(Rules, Paragraph 3(b), Supplemental Rules, Paragraph 3,4,12)

[17.]   This Complaint has been submitted to the Center in electronic form, including annexes, in the appropriate format.

17

**Gómez-Pinzón**
SINCE 1992

[18.]   A copy of this Complaint has been transmitted to the concerned registrar on March, 29, 2022 in electronic form in accordance with paragraph 4(c) of the Supplemental Rules.

## XII. Payment

(Rules, Paragraph 19; Supplemental Rules Paragraph 10, Annex D)

[19.]   As required by the Rules and Supplemental Rules, payment in the amount of USD 1,500 has been made by bank transfer, transaction No. 000002907670 on March 18, 2022.

## XIII. Certification

(Rules, Paragraph 3(b)(xiii); Supplemental Rules, Paragraph 15)

[20.]   The Complainant agrees that its claims and remedies concerning the registration of the domain name, the dispute, or the dispute's resolution shall be solely against the domain name holder and waives all such claims and remedies against (a) the WIPO Arbitration and Mediation Center and Panelists, except in the case of deliberate wrongdoing, (b) the concerned registrar(s), (c) the registry administrator, (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

[21.]   The Complainant certifies that the information contained in this Complain is to the best of the Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

*MAURICIO JARAMILLO CAMPUZANO*

*Attorney at Law*
*COMPAÑÍA MUNDIAL DE SEGUROS S.A.*

Date: March 29, 2022.

**Gómez-Pinzón**
SINCE 1992

## XVI. Lists of Annexes

(Rules, Paragraph 3(b)(xiv); Supplemental Rules, Paragraph 4(a), 12(a), Annex E)

[22.]   The Rules provide that a Complaint or Response, including any annexes, shall be submitted electronically. Under the Supplemental Rules, there is a file size limit of 10MB (ten megabytes) for any one attachment, with an overall limit for all submitted materials of no more than 50 MB (fifty megabytes).

[23.]   In particular, paragraph 12 and Annex E of the Supplemental Rules provides that, other than by prior arrangement with the Center, the size of any individual file (such as a document in Word, PDF, or Excel format) transmitted to the Center in connection with any UDRP proceeding shall itself be no larger than 10MB. When larger amounts of data need to be transmitted, larger files can be "split" into a number of separate files or documents each no larger than 10MB. The total size of a Complaint or response (including any annexes) filed in relation to a UDRP dispute shall not exceed 50MB, other than in exceptional circumstances (including in the case of pleadings concerning a large number of disputed domain names) where previously arranged with the Center.

**Annex 1**. Communication sent by the Center to the Complainant on March 25, 2022, along with a WHOIS search report for the domain name «SEGUROSMUNDIAL.COM» (conducted on March 5, 2022).

**Annex 2.** Registration Agreement for the company ENOM, INC.

**Annex 3.** Evidence about Complainant's trademarks recognition in the market, along with informal English translations.

**Annex 3.1**. Press article published on May 18, 2013, by "*Diario la República.*"

**Annex 3.2**. Press article published on October 11, 2019, by "*Diario la República.*"

**Annex 3.3**. Press article published on December 22, 2020, by "*Revista Semana.*"

**Annex 3.4**. Screenshot from the interactive dashboard published by   the Colombian Insurers Trade Association (hereinafter "FASECOLDA" for the corresponding Spanish

**Gómez-Pinzón**
SINCE 1992

acronym) showing that the Complainant was listed as the third-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2016.

**Annex 3.5**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the second-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2017.

**Annex 3.6**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the second-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2018.

**Annex 3.7**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the second-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2019.

**Annex 3.8**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the second-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2020.

**Annex 3.9**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the second-largest insurer in the market by the expedition of compulsory car insurances in Colombia for 2021.

**Annex 3.10**. Screenshot from the interactive dashboard published by FASECOLDA showing that the Complainant was listed as the third-largest insurer in the market by the expedition of insurances for torts in Colombia for 2021.

**Annex 4**. Trademark search report for the expressions «SEGUROS» and «MUNDIAL» in class 36 of the Nice Classification, issued by the Colombian Trademark Office (Superintendence of Industry and Commerce) on January 12, 2022, along with an informal English translation.

**Annex 5**. Trademark certificates and certificates related to other distinctive signs held by the Complainant the valid, enforceable, and are exclusive rights whose protection is sought by means of this complaint, along with informal English translations:

**Annex 5.1**. Trademark certificate n.° 407422 in class 36.

**Annex 5.2**. Trademark certificate n.° 398116, in class 36.

**Gómez-Pinzón**
SINCE 1992

**Annex 5.3**. Trademark certificate n.° 503808, in class 36.

**Annex 5.4**. Trademark certificate n.° 503809, in class 36.

**Annex 5.5**. Trademark certificate n.° 503810, in class 36.

**Annex 5.6**. Trademark certificate n.°503811, in class 36.

**Annex 5.7**. Trade Name (*"nombre comercial"*) certificate n.° 9727 and a screenshot from the electronic platform of the Colombian Trademark Office (Superintendency of Industry and Commerce) showing the date from which the trade name is protected.

**Annex 5.8**. Business name (*"enseña comercial"*) certificate n.° 9758 and a screenshot from the electronic platform of the Colombian Trademark Office (Superintendency of Industry and Commerce) showing the date from which the business name is protected.

**Annex 6.** Resolution n.°024434 dated April 29, 2011, issued by the Colombian Trademark Office (Superintendence of Industry and Commerce), and informal English translation

**Annex 7**. Certificate of incorporation and legal standing for the Complainant, and informal English translation.

**Annex 8**. Evidence related to the ownership of the domain segurosmundial.com.co held by the Complainant: billings for the renovation of the domain and internal emails showing that it is owned by the Complainant, along with informal translations.

**Annex 9.** Images and videos are taken from the disputed domain name «**SEGUROSMUNDIAL.COM**»:

**Annex 9.1.** Images taken from the domain name «**SEGUROSMUNDIAL.COM**» website on January 14, 2022.

**Annex 9.2.** Video taken from the domain name «**SEGUROSMUNDIAL.COM**» on February 7, 2022.

**Annex 10**. Email sent by attorney Daniel Trujillo to the Marketplace "*Afternic*" on September 6, 2021, and follow-up communication sent on September 7, 2021.

**Annex 11**. Image of the selling price in COP from the domain name «**SEGUROSMUNDIAL.COM**» on October 1, 2021, and proof of automatic currency

**Gómez-Pinzón**

SINCE 1992

conversion into USD using the website www.expansion.com, along with informal English translations.

**Annex 12**. Image of selling price in COP for the domain name «**SEGUROSMUNDIAL.COM**» on October 21, 2021, and proof of automatic currency conversion into USD using the website www.expansion.com, along with informal English translations.

**Annex 13**. Evidence about the running auction of the domain name «**SEGUROSMUNDIAL.COM**» in "GoDaddy Colombia":

**Annex 13.1**. Images taken from GoDaddy's auction website on January 14, 2022, and informal translation of relevant sections.

**Annex 13.2**. Video taken from GoDaddy's auction website on February 8, 2022.

**Annex 14**. Power of Attorney granted by the Complainant to attorney Mauricio Jaramillo Campuzano to represent the company at this case.

**Annex 15**. Bank transfer certificate (transaction No. 000002907670 dated March 18, 2022).

# Exhibit 2

| | |
|---|---|
| **From:** | Domain.Disputes@wipo.int |
| **To:** | udrp@enom.com; legal@enom.com; legal@enom.com; mjaramillo@gomezpinzon.com; notificacionespi@gomezpinzon.com; Brian Leventhal |
| **Cc:** | interested@domainmarket.com; contact@domainmarket.com; BuyNow@DomainMarket.com; udrp@icann.org |
| **Subject:** | (LAZ) D2022-1003 <segurosmundial.com> Notification of Decision |
| **Date:** | Tuesday, June 7, 2022 1:42:44 PM |
| **Attachments:** | Decision D2022-1003.pdf |

## WIPO Arbitration and Mediation Center



June 7, 2022

Re: Case No. D2022-1003
<segurosmundial.com>
Notification of Decision

Dear Parties,

Please find attached the full text of the decision issued by the Administrative Panel in the above-referenced case.

The Administrative Panel's finding is as follows:

"For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <segurosmundial.com> be transferred to the Complainant"

Pursuant to Paragraph 4(k) of the Uniform Domain Name Dispute Resolution Policy, the concerned Registrar eNom, LLC shall proceed to implement the above decision on the tenth business day (as observed in the location of that Registrar's principal office) after receiving this notification. The concerned Registrar will not implement the decision if, before the 10-day waiting period has expired, the Respondent submits official documentation (such as a copy of a complaint, file stamped by the clerk of the court) to the Registrar demonstrating that it has commenced a legal proceeding against the Complainant in a jurisdiction to which the Complainant has submitted under Paragraph 3(b)(xii) of the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules).

Pursuant to Rules, Paragraph 16(a), the Registrar is directed to inform the Complainant, the Respondent, the Internet Corporation for Assigned Names and Numbers (ICANN), and the WIPO Arbitration and Mediation Center as soon as possible of the specific date on which the Administrative Panel's decision will be implemented, absent a notification by the Respondent in accordance with the above.

Sincerely,

Luisa A.
Case Manager

34, chemin des Colombettes, 1211 Geneva 20, Switzerland
T +41 22 338 82 47 F +41 22 740 37 00 E domain.disputes@wipo.int W www.wipo.int/amc



**ARBITRATION
AND
MEDIATION CENTER**

## ADMINISTRATIVE PANEL DECISION
Compañía Mundial de Seguros S.A. v. Domain Administrator,
DomainMarket.com
Case No. D2022-1003

### 1. The Parties

The Complainant is Compañía Mundial de Seguros S.A., Colombia, represented by Gómez-Pinzón, Colombia.

The Respondent is Domain Administrator, DomainMarket.com, United States of America ("United States") represented by Brian H. Leventhal, United States.

### 2. The Domain Name and Registrar

The disputed domain name <segurosmundial.com> is registered with eNom, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on March 24, 2022. On the same day, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name.  On the same day, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint.  The Center sent an email communication to the Complainant on March 25, 2022, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint.  The Complainant filed an amended Complaint on March 30, 2022.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on April 7, 2022.  In accordance with the Rules, paragraph 5, the original due date for Response was April 27, 2022.  On April 26, 2022, at the request of the Respondent and in accordance with the Rules, paragraph 5(b), the due date for Response was extended to May 1, 2022. The Response was filed with the Center on May 2, 2022.

On May 3, 2022, the Complainant sent an email communication to the Center regarding the late submission of the Response.  On May 4, 2022, the Respondent sent an email communication to the Center commenting on the late Response.

The Center appointed Matthew Kennedy as the sole panelist in this matter on May 9, 2022.  The Panel finds that it was properly constituted.  The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant is one of the largest insurance companies in Colombia.  It was registered with the Bogotá Chamber of Commerce in 1973, and its current acronym in that register is "Seguros Mundial".  In 1992 and 1994, respectively, the Complainant registered a Colombian trade name and a Colombian business name that are both identical to the first trademark shown in the table below.  The Complainant holds multiple Colombian trademark registrations, including the following, both specifying services in class 36:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| MUNDIAL SEGUROS semi-figurative mark | 398116 | March 4, 2010 |
| MUNDIAL SEGUROS COMPAÑIA ESPECIALIZADA semi-figurative mark | 407422 | August 31, 2010 |

The first mark shown in the table above is referred to in this Decision as the "MUNDIAL SEGUROS mark".  Protection for the second mark is claimed in colors.  The Complainant also holds Colombian trademark registrations numbers 503808, 503809, 503810 and 503811, all for semi-figurative marks featuring "Seguros Mundial" in different color combinations, all registered on July 23, 2014, and all specifying services in class 36.

The four marks that contain the above element are referred to in this Decision as the "SEGUROS MUNDIAL marks".  None of the trademark registrations in evidence disclaims exclusive use of any word that the trademarks contain.  All the trademark registrations remain current.

In 2011, the Complainant unsuccessfully opposed a trademark application for EL MUNDIAL.  During the course of the opposition proceeding, the Colombian Superintendence of Industry and Commerce (referred to below as "SIC") recognized that, in light of its importance and presence in the Colombian market, the Complainant's MUNDIAL SEGUROS mark and trade name were famous during the period 2002 to 2006 to distinguish insurance and other services in class 36.[1]

The Complainant registered the domain name <segurosmundial.com.co>, allegedly on August 29, 2013, and uses it in connection with a website where it provides information about itself and offers insurance products.  The Complainant provides copies of Colombian press articles about itself.  The earliest article is from 2013 and refers to the Complainant as "Mundial Seguros";  another from 2019 refers to the Complainant as both "Mundial" and "Seguros Mundial";  and a third article from 2020 refers to the Complainant as "Seguros Mundial".

The Respondent operates a business of buying and selling domain names.  Its owner is named Michael Mann.  The Respondent offers domain names for sale at its secondary marketplace website at "www.domainmarket.com".

---

[1] SIC Resolution N° 24434 of April 29, 2011.

The disputed domain name was acquired by the Respondent on December 12, 2011.  It resolves to a landing page that advertises it for sale as a premium domain name.  The landing page prominently displays the disputed domain name as a domain name for sale along with the sale price, a means to purchase it, the DomainMarket.com logo and contact details, and a search engine for browsing the domain names available for purchase on the website.  The landing page does not display any advertising or Pay-Per-Click links.  As at January 14, 2022, the sale price was USD 2 million.

The disputed domain name is also advertised for sale on at least two brokers' websites.  On September 6 and 7, 2021, an intermediary contracted by the Complainant contacted one of these brokers regarding a possible purchase of the disputed domain name.  The evidence shows that on October 1, 2021, the asking price for the disputed domain name on another broker's website was over COP 3.8 billion (equivalent to over USD 900,000), and by October 21, 2021 it was over COP 7.5 billion (equivalent to over USD 1.8 million).  As at January 14, 2022, the same broker's website was offering the disputed domain name for sale by auction, inviting a bid of USD 1.3 million or more and offering to sell the disputed domain name for USD 2 million.

The Registrar confirmed that the language of the Registration Agreement is English.


**5. Parties' Contentions**

**A. Complainant**

The disputed domain name is identical to the Complainant's SEGUROS MUNDIAL mark and confusingly similar to the Complainant's MUNDIAL SEGUROS mark.  The expressions "Seguros Mundial" and "Mundial Seguros" are the prevailing nominative elements of the Complainant's trademark family.

The Respondent has no rights or legitimate interests in respect of the disputed domain name.  The associated website is not offering real content but only announces the Respondent's intention to sell the disputed domain name.  The Complainant has never licensed or otherwise permitted the Respondent to use the expressions "Seguros Mundial" or "Mundial Seguros".  The Respondent has not used the disputed domain name in connection with a *bona fide* offering of goods or services.  The Respondent has not been commonly known by the disputed domain name.  The Respondent is not making a legitimate noncommercial or fair use of the disputed domain name.  The Respondent cannot allege a legitimate interest on the basis that the disputed domain name was registered before the SEGUROS MUNDIAL trademarks, because the Respondent does not make a genuine use of the disputed domain name and is merely offering it for sale.

The disputed domain name was registered and is being used in bad faith.  The Respondent's primary purpose in registering the disputed domain name was to offer it for sale at a highly exaggerated price that exceeds the out-of-pocket costs directly related to the disputed domain name.  The price increased dramatically in recent months due to the Complainant's indirect enquiries to acquire the disputed domain name.

**B. Respondent**

The Respondent submits that the Complainant has failed to meet its burden of proof on all three elements of paragraph 4(a) of the Policy.

The disputed domain name cannot be identical to the Complainant's trademarks, because they are figurative marks.  The Complainant's trademarks strongly feature a design element but with the word "seguros" clearly subordinated to the point where the casual viewer would likely not even notice it.  One of the reasons why the SIC denied the Complainant's opposition to a third party's trademark application for EL MUNDIAL was that the Complainant's mark was a figurative mark.  The Complainant's trade name and business name are not evidence of trademark rights.

The Respondent has rights and legitimate interests in respect of the disputed domain name.  The Respondent is in the business of buying and selling domain names composed of descriptive, geographic and generic terms, common phrases, and combinations thereof.  The Respondent sells over 1,000 domain names per year.  Since it was acquired by the Respondent, the disputed domain name has never been used to sell goods or services competitive with those of the Complainant.  The Respondent registered the disputed domain name in connection with its legitimate business of reselling premium domain names, which is a *bona fide* offering of goods and services.  The Respondent has been using the disputed domain name in this way for nearly 11 years without any complaint or other action taken by the Complainant.  The Respondent's landing page makes it very clear to visitors that the disputed domain name is merely an item of inventory amongst hundreds of thousands of other domain names being offered for sale by the Respondent, many of which are comprised of Spanish and other non-English words.  The Respondent (who is based in Florida, United States) registered the disputed domain name in good faith because it is comprised of generic words that combine to form a short memorable domain name well suited for many possible uses, which gives it significant potential resale value.  This good faith purpose is evident when viewed in the context of the other over 100 other domain names that the Respondent has bought and sold over the past 12 years that are comprised of either "seguros" or "mundial" combined with other generic terms, including <areaseguros.com>, <bolsadeseguros.com>, <seguroamericano.com>, <viajeroseguro.com>, <segurossociales.com>, <chilemundial.com>, <escolamundial.com>, <historiadelmundial.com>, <mundialstyle.com>, <gustomundial.com>, <alianzamundial.com>, <presidentemundial.com>, <historiamundial.com>, and <dominacionmundial.com>, all of which are currently listed for sale on the Respondent's website.  The Respondent does not claim rights or legitimate interests in the disputed domain name purely because it was the first to register the disputed domain name (unlike the respondents in two cases cited by the Complainant) but, rather, based on its *bona fide* use of the disputed domain name in connection with its legitimate business.

The disputed domain name was registered and is being used in bad faith.  The Respondent was not aware of the Complainant's alleged rights at the time at which it registered the disputed domain name.  The disputed domain name was not registered with an intent to profit from or otherwise abuse any trademark rights that the Complainant may have.  The Respondent has not engaged in any of the bad faith behaviors listed in paragraph 4(b) of the Policy.  The mere offering of a domain name for sale does not establish that it was registered for the purpose of targeting the Complainant or its competitors.  The word "seguro" is a common generic term, as is the word "mundial".  In the WIPO Global Brand database alone there are over 4,000 listings that include "seguros" and over 2,000 listings that include "mundial".  The two items combine naturally to form a generic phrase that is intuitive and easily adaptable to countless concepts, products and services, particularly related to public safety and security.  No reasonable person arriving at the Respondent's landing page would believe the page has any association with the Complainant.  The Complainant cites no trademark rights outside of Colombia.  The fact that the Complainant had been issued two figurative trademarks in Colombia prior to the Respondent's registration of the disputed domain name (all others having been issued after the Respondent's registration) does not itself constitute evidence of bad faith when the Respondent had no knowledge of such marks or the Complainant's existence, particularly given that the Complainant did not then (nor does now) hold any trademark rights in the United States where the Respondent operates its business.  The Complainant offers no evidence that its mark was famous or sufficiently known to the general public to create an immediate association with the Complainant at the time that the Respondent registered the disputed domain name in 2011.  All of the articles and other documentation annexed to the Complaint are dated after the Respondent registered the disputed domain name or merely establish that the Complainant has gained notoriety solely within Colombia.  The SIC only declared the notoriety of the Complainant's mark in an Andean Community member state.  The Respondent is in the business of selling domain names for a profit, which is a legitimate enterprise.  The fact that an offered price exceeds the registrant's cost is only relevant if the registrant offered it to the complainant, which is not the case here.  The correspondence regarding a possible acquisition of the disputed domain name is irrelevant;  not only did it take place 10 years after the Respondent registered the disputed domain name, but it was also with a third party (a broker), not the Respondent.  This proves nothing other than that the Complainant is clearly pursuing the Complaint solely because it did not want to pay market price for the disputed domain name.  The Respondent lists domain names for sale with multiple third party sales channels over whom it has no control.  The Respondent's portfolio consists of over 300,000 domain names;  the fact

that in five cases over the past 15 years a panelist believed that there were indicia of bad faith hardly establishes a pattern of such conduct.

## 6. Discussion and Findings

### 6.1. Late Filing of the Response

The Respondent filed the Response on the day after the due date despite having received an extension of the due date.  It explained that the Response was filed late due to a loss of Internet connection the night before.

The Complainant requests the Panel to apply paragraph 5(f) of the Rules which requires the Panel, in the absence of exceptional circumstances, to decide the dispute based on the Complaint where a Respondent does not submit a Response.  The Complainant submits that the Respondent failed to provide any proof of "exceptional circumstances" that prevented him from filing on time as a "loss of Internet connection" is not an exceptional circumstance or an irresistible event.  The Complainant also points out that the Respondent had 24 days after service of the written notification of the Complaint to present a Response.

The Respondent requests that the Panel exercise its discretion under paragraph 10(b) of the Rules to accept and consider the Response.  It submits that the filing delay was *de minimis*, did not delay the proceeding and did not prejudice the Complainant.

The Panel has a discretion to admit a late Response as part of its general powers under paragraph 10 of the Rules (a) to conduct the administrative proceeding in such a manner as it considers appropriate in accordance with the Policy and Rules;  (b) to ensure that each Party is given a fair opportunity to present its case;  and (c) to ensure that the administrative proceeding takes place with due expedition.

In the present case, the Panel notes that the late Response contains, among other things, relevant factual information regarding the Respondent's business and domain name portfolio that is not available elsewhere on the record.  Further, admission of the late Response will not prejudice either Party or substantially delay the proceeding.  In these circumstances, the Panel exercises its discretion to accept the late Response. Having accepted the Response, the Panel notes that paragraph 5(f) of the Rules does not apply.

### 6.2 Substantive Issues

Paragraph 4(a) of the Policy provides that the Complainant must prove each of the following elements:

(i)        the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;  and

(ii)        the Respondent has no rights or legitimate interests in respect of the disputed domain name;  and

(iii)        the disputed domain name has been registered and is being used in bad faith.

The burden of proof of each of the above elements is borne by the Complainant.

### A. Identical or Confusingly Similar

Based on the evidence presented, the Panel finds that the Complainant has rights in the various marks listed in Section 4 above, including the MUNDIAL SEGUROS mark and the SEGUROS MUNDIAL marks.  The Complainant has rights in all these marks at the time at which it filed the Complaint.

The Panel notes that the Complainant's marks are semi-figurative or mixed marks.  Their figurative elements are incapable of representation in a domain name for technical reasons.  While the figurative elements are

prominent, at least one of the textual elements in each mark (*i.e.,* the term "Mundial") is also prominent. Accordingly, the Panel considers that the figurative elements can be largely disregarded in the comparison between the disputed domain name and these marks.  See WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0"), section 1.10.

The disputed domain name wholly incorporates both textual elements in the SEGUROS MUNDIAL marks, in the same order in which they appear in these marks.  The textual elements of these marks remain clearly recognizable within the disputed domain name.

The disputed domain name wholly incorporates both the textual elements in MUNDIAL SEGUROS semi-figurative mark, but in reverse order.  Given that the textual elements of the mark remain recognizable within the disputed domain name, the Panel does not consider that the reversal of their order prevents a finding of confusing similarity.  See WIPO Overview 3.0, section 1.7 and, for example, *Société des Bains de Mer et du Cercle des Etrangers à Monaco v. Montecarlo Online Casino (MOC),* WIPO Case No. D2005-0338.

Given the Panel's findings regarding the SEGUROS MUNDIAL and MUNDIAL SEGUROS marks, it is unnecessary to consider the SEGUROS MUNDIAL COMPAÑÍA ESPECIALIZADA mark that the Complainant also owns.

The Respondent submits that the word "seguros" is clearly subordinated in the Complainant's marks to the point where the casual viewer would likely not even notice it.  Indeed, the Panel notes that the certificate of registration of the MUNDIAL SEGUROS mark lists only the word "Mundial" in the trademark data field. However, even if the Panel does not take into account the word "seguros" in any of the marks, the disputed domain name still wholly incorporates the dominant textual element of these marks (*i.e.,* the term "Mundial"), which is clearly recognizable in the disputed domain name.  In this analysis, the addition of the descriptive word "seguros" as the initial element of the disputed domain name still does not prevent a finding of confusing similarity.  See WIPO Overview 3.0, section 1.8.

The only additional element in the disputed domain name is a generic Top-Level Domain extension ("gTLD") ".com".  As a standard requirement of domain name registration, this element may be disregarded in the comparison between the disputed domain name and the Complainant's mark.  See WIPO Overview 3.0, section 1.11.

Accordingly, the Panel finds that the disputed domain name is confusingly similar to a trademark in which the Complainant has rights.  The Complainant has satisfied the first element of paragraph 4(a) of the Policy.

**B. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy sets out the following circumstances which, without limitation, if found by the Panel, shall demonstrate that the respondent has rights to, or legitimate interests in, a disputed domain name, for the purposes of paragraph 4(a)(ii) of the Policy:

(i)       before any notice to [the respondent] of the dispute, [the respondent's] use of, or demonstrable preparations to use, the [disputed] domain name or a name corresponding to the [disputed] domain name in connection with a *bona fide* offering of goods or services;  or

(ii)      [the respondent] (as an individual, business, or other organization) [has] been commonly known by the [disputed] domain name, even if [the respondent has] acquired no trademark or service mark rights;  or

(iii)     [the respondent is] making a legitimate noncommercial or fair use of the [disputed] domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

As regards the first circumstance set out above, the Respondent actively uses the disputed domain name in connection with a landing page where it offers the disputed domain name for sale.  The disputed domain

name wholly incorporates the textual elements of the Complainant's SEGUROS MUNDIAL marks and MUNDIAL SEGUROS mark.  The Complainant submits that it has never licensed or otherwise permitted the Respondent to use the expressions "Seguros Mundial" or "Mundial Seguros".  The Panel notes that the disputed domain name is composed of two dictionary words in the Spanish language (plus a gTLD extension) but this fact does not automatically confer rights or legitimate interests on the Respondent for the purposes of the Policy.  Rather, the disputed domain name should be genuinely used in connection with the relied-upon dictionary meaning and not to trade off third party trademark rights.  See WIPO Overview 3.0, section 2.10.  For the reasons given in Section 6.2C below, the Panel considers it more likely than not that the Respondent is using the disputed domain name to trade off the Complainant's trademark rights.  Accordingly, the Panel does not consider that the Respondent is using the disputed domain name in connection with a *bona fide* offering of goods or services.

As regards the other circumstances set out above, nothing on the record indicates that the Respondent has been commonly known by the disputed domain name.  The Respondent is offering the disputed domain name for sale at a profit, not making a noncommercial or fair use of the disputed domain name.  Nothing on the record indicates that the Respondent has any other grounds to claim rights or legitimate interests in respect of the disputed domain name.

Therefore, based on the record of this proceeding, the Panel finds that the Complainant has satisfied the second element in paragraph 4(a) of the Policy.

**C. Registered and Used in Bad Faith**

Paragraph 4(b) of the Policy provides that certain circumstances, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith.  The first circumstance is as follows:

(i)        circumstances indicating that [the respondent has] registered or [the respondent has] acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of [the respondent's] documented out-of-pocket costs directly related to the [disputed] domain name;

As regards registration, the disputed domain name was acquired by the Respondent in 2011, three years before the registration of the SEGUROS MUNDIAL marks.  The Panel recalls that, where a respondent registers or acquires a domain name before the complainant's trademark rights accrue, panels will not normally find bad faith on the part of the respondent.  See WIPO Overview 3.0, section 3.8.1.  There is an exception to that general proposition in certain limited circumstances where the facts of the case establish that the respondent's intent in registering or acquiring the disputed domain name was to capitalize unfairly on the complainant's nascent trademark rights.  See WIPO Overview 3.0, section 3.8.2.  Nothing in the record of this dispute gives any reason to believe that the Respondent in 2011 could have been intent on capitalizing on the Complainant's eventual SEGUROS MUNDIAL marks.  The evidence does not show that the Complainant was using that mark or even the name "Seguros Mundial" in 2011 or earlier, or that it had any plans to do so.  While the company data from the Bogotá Chamber of Commerce include "Seguros Mundial" as the Complainant's acronym and <segurosmundial.com.co> in its contact email address, the Complainant does not claim to have registered that domain name until 2013 (two years after the Respondent acquired the disputed domain name) so the data is evidently not original data from the company registration in 1973.  Accordingly, the Panel will not consider the SEGUROS MUNDIAL marks any further.

Turning to the Complainant's MUNDIAL SEGUROS mark, the disputed domain name was acquired by the Respondent one year after the registration of this mark.  The disputed domain name contains the same textual elements as this mark (plus a gTLD extension) but in the reverse order.  Although the textual elements in the disputed domain name are both dictionary words in Spanish, they do not form a phrase because "seguros" is in the plural whereas "mundial" is in the singular.  For example, the disputed domain name does not contain the phrase "seguros mundiales", meaning "worldwide insurance".  Although the plural "seguros" in the disputed domain name may be translated as "insurance", the singular "mundial" is not being

used to qualify that word in its dictionary sense of "world" or "worldwide".  Rather, "mundial" is used to qualify "seguros" in an arbitrary sense, like a brand.  The disputed domain name could be translated as "Mundial insurance".  The Complainant has demonstrated that, long before the Respondent's acquisition of the disputed domain name, it had established a strong reputation in its MUNDIAL SEGUROS mark with respect to insurance services in Colombia.  Although the Complainant has not established that it had a reputation in the United States, where the Respondent is located, it was possible that the Respondent had heard of the Complainant in 2011.  The arbitrary combination (in either order) of the term "seguros", meaning "insurance", with "mundial", appears to reflect an awareness of the Complainant and the nature of the Complainant's services.  These circumstances would indicate that the Respondent had the Complainant's mark in mind when it acquired the disputed domain name.

The Complainant points out that five panels in prior proceedings under the Policy have found that the Respondent had registered and was using 11 other domain names in bad faith.  See *Arne Jacobsen Design I/S v. Domain Administrator, DomainMarket.com,* WIPO Case No. D2017-0552 regarding <arnejacobsen.com>;  *Supermac's (Holdings) Limited v. Domain Administrator, DomainMarket.com,* WIPO Case No. D2018-0540 regarding <supermacs.com>;  *Lakes Gas Co. v. Domain Administrator, DomainMarket.com,* WIPO Case No. D2019-0830 regarding <lakesgas.com>;  *Facebook Inc. v. Domain Administrator, DomainMarket.com,* WIPO Case No. D2020-1199 regarding <facebookanalysis.com>, <facebookcommerce.com>, <facebookfan.com>, <facebookforever.com>, <facebookguy.com>, <facebookservices.com>, and <facebookstrategy.com>;  and *Société Librairie Fernand Nathan – Fernand Nathan & Cie v Domain Administrator, DomainMarket.com,* WIPO Case No. D2022-0016 regarding <kididoc.com>.  These prior bad faith registrations do not imply that the Respondent has registered every domain name in its portfolio in bad faith but they do indicate that the targeting of the Complainant's mark in the disputed domain name forms part of a pattern of conduct.

The Respondent's explanation for its acquisition of the disputed domain name is that it registers and sells domain names consisting of descriptive, geographic and generic terms, common phrases, and combinations thereof, including in Spanish.  The examples that it gives from its portfolio do form actual phrases such as <seguroamericano.com> and <alianzamundial.com> (which combine pairs of words in the singular), or <segurossociales.com> (which combines a pair of words in the plural).  However, the disputed domain name does not form such a phrase, for the reason explained above.  In the Response, the Respondent distinguishes between the singular and plural forms of "seguro" and discusses the meanings of "seguros" and "mundial" in some detail, from which it is reasonable to infer that the Respondent is aware of the grammatical difference between the disputed domain name and the other domain names that it lists from its portfolio.  Consequently, and contrary to the Respondent's submission, the Panel does not consider the disputed domain name to be an intuitive phrase with a range of meanings and plausible uses unrelated to the Complainant's trademark unlike, for example, the domain names at issue in *Ground Up, Inc. v. DomainMarket.com,* WIPO Case No. D2018-1944;  and *White Wolf Entertainment AB v. Domain Administrator, Domainmarket.com,* WIPO Case No. D2018-0496.

Neither Party advances any other explanation for the registration of the disputed domain name.

Therefore, the Panel considers it more likely than not that the Respondent had the Complainant's MUNDIAL SEGUROS mark in mind at the time at which it acquired the disputed domain name.

As regards use, the disputed domain name is used in connection with a landing page where it is offered for sale for USD 2 million.  It is also offered for sale on brokers' websites.  There is no dispute that the Respondent's asking price includes a profit margin, even after taking into account the purchase price and 11 years of renewal fees.  Given the findings above regarding the composition of the disputed domain name, the Panel considers that the party most likely to be interested in acquiring the disputed domain name is the Complainant.  In these circumstances, the sale price on the landing page is sufficient to establish that the Respondent acquired the disputed domain name primarily for the purpose of selling it to the Complainant or to a competitor of the Complainant for valuable consideration in excess of the Respondent's documented out-of-pocket costs directly related to the disputed domain name within the terms of paragraph 4(b)(i) of the Policy.

The Respondent submits that an offer to sell the disputed domain name now does not indicate its subjective state of mind at the time that it acquired it eleven years ago.  However, in the Panel's view, the composition of the disputed domain name demonstrates an intent at that time to target the Complainant's mark, and the subsequent use of the disputed domain name demonstrates how the Respondent intended to profit from it.

Accordingly, the Panel finds it more likely than not that the disputed domain name was registered and is being used in bad faith.  The Complainant has satisfied the third element in paragraph 4(a) of the Policy.

**D. Reverse Domain Name Hijacking**

The Respondent alleges that, after deciding for 11 years not to challenge the Respondent's legitimate ownership of the disputed domain name and having decided the price to purchase it was unacceptable, the Complainant now seeks to take it from its rightful owner through an abuse of the UDRP process.

The Panel considers that, even if the Complainant were aware of the registration of the disputed domain name since it registered the domain name <segurosmundial.com.co> in 2013, that would not imply that the Complainant consented to the Respondent's acquisition and use of the disputed domain name or waived its rights under the Policy.

The Panel does not consider the Complaint to be an abuse of the UDRP process;  on the contrary, the Panel upholds the Complaint.

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <segurosmundial.com> be transferred to the Complainant.

*/Matthew Kennedy/*
**Matthew Kennedy**
Sole Panelist
Date:  May 23, 2022